**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rolando PERALTA, Defendant–Appellant.**

**No. 90–50186.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1991.

Decided Aug. 14, 1991.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 31, 1991.

---

Edward I. Gritz, Joseph Walsh, Los Angeles, Cal., for defendant-appellant.

Carol L. Gillam, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN, PREGERSON and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Rolando Peralta appeals from the judgment of conviction entered following a trial by jury. Peralta was found guilty of conspiring to take a hostage and to commit extortion in violation of 18 U.S.C. § 371, hostage taking in violation of 18 U.S.C. § 1203, and extortion in violation of 18 U.S.C. § 1951. Peralta seeks reversal on the following grounds:

One. The district court erred in admitting hearsay statements under the co-conspirator exception because a judgment of acquittal of the conspiracy charge was entered in favor of the declarant.

Two. The district court erred in admitting expert testimony regarding the behavior of kidnap victims.

Three. The district court did not have jurisdiction over a charge alleging the taking hostage of a citizen of Nicaragua in Mexico.

We conclude that each of these contentions lacks merit and affirm the judgment.

## I

### Pertinent Factual Background

Peralta was accused of having ordered the kidnapping of Maria Robleto, daughter of Peralta's former lover, Indiana Robleto. Also charged in the conspiracy count were Socorro Contreras and Rigoberto Herrera. The Government's theory at trial was that Maria Robleto was kidnapped in Mexico to induce Indiana Robleto to sign quit claim deeds on real property held jointly with Peralta, and to force her to return money he claimed was stolen from him.

At the suggestion of the Federal Bureau of Investigation, Indiana Robleto asked Contreras to act as an intermediary in the negotiations for Maria's release. At trial, the Government introduced evidence of the tape recorded ransom negotiations between Indiana Robleto and Contreras. At the completion of the Government's case, the district court granted Contreras' motion for a judgment of acquittal.

## II

### Admissibility Of Declarations Of Third Person Acquitted Of Conspiracy

The district court admitted into evidence tape recordings containing Contreras' extrajudicial declarations under the co-conspirator exception to the hearsay rule set forth in Rule 801(d)(2)(E) of the Federal Rules of Evidence. Peralta contends that these recordings were not admissible under Rule 801(d)(2)(E) because the district court entered a judgment of acquittal of the conspiracy charge against Contreras at the end of the Government's case. Rule 801(d)(2)(E) provides that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Fed.R.Evid. 801(d)(2)(E).

> Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied ... that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy." ... [T]he existence of a conspiracy and petitioner's involvement in it are preliminary questions of fact that, under Rule 104, must be resolved by the court.

*Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). The Government must prove that the declarant was a member of the conspiracy by a preponderance of the evidence, before the trial court can admit a co-conspirator's statement. *Id.*

> The inquiry made by a court concerned with these matters is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied. Thus, the evidentiary standard is unrelated to the burden of proof on the

substantive issues, be it a criminal case, or a civil case.

*Id.* (citations omitted).

 We review a district court's decision to admit evidence of a co-conspirator's declaration for abuse of discretion. *United States v. Torres,* 908 F.2d 1417, 1424 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990) (citing *United States v. Sanchez–Lopez,* 879 F.2d 541, 553 (9th Cir.1989)).

> We review the district court's finding that: 1) there was a conspiracy and 2) the statement was made "during" and "in furtherance of" the conspiracy for clear error. *See United States v. Zavala–Serra,* 853 F.2d 1512, 1515 (9th Cir. 1988). In other words, we cannot upset such findings unless the district court "could not reasonably have come to that conclusion." *United States v. Echeverry,* 759 F.2d 1451, 1457 (9th Cir.1985).

*Torres,* 908 F.2d at 1424.

This circuit has not previously determined whether the extrajudicial statements of a person, made in furtherance and during the course of a conspiracy, can be considered by a jury under the co-conspirator exception, where the declarant has been acquitted of conspiracy charges. Each circuit that has confronted this question has held that the acquittal of the declarant of conspiracy does not render the statement inadmissible under the co-conspirator exception. *United States v. Carroll,* 860 F.2d 500, 506 (1st Cir.1988); *United States v. Kincade,* 714 F.2d 1064, 1065 (11th Cir. 1983); *United States v. Gil,* 604 F.2d 546, 549 (7th Cir.1979); *United States v. Stanchich,* 550 F.2d 1294, 1299 (2nd Cir.1977); *United States v. Cravero,* 545 F.2d 406, 419 (5th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977); *United States v. Bass,* 472 F.2d 207, 213–14 (8th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973).

In *United States v. Stanchich,* 550 F.2d 1294 (2d Cir.1977), the district court allowed the statements of co-conspirators to be admitted at trial after dismissing conspiracy charges against defendant and the co-conspirator at the end of the Govern-

ment's case. *Id.* at 1298–1299. In affirming the district court, the Second Circuit reasoned as follows:

> Appellant argues that the same considerations that led the judge to dismiss the conspiracy count required him to hold the declarations inadmissible on the substantive counts. The argument overlooks the difference in the standards governing the two determinations. In deciding whether the evidence is sufficient to warrant submission of a conspiracy count to a jury, the judge must determine ... "whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." A judge may thus consistently find that the evidence (even including admissible hearsay declarations) did not meet the higher test required for submission of a conspiracy count to a jury, although the independent evidence did meet the lower [preponderance of the evidence] test required for admission of the declaration.

*Id.* at 1299 (citations omitted) (footnote omitted).

In *United States v. Gil,* 604 F.2d 546 (7th Cir.1979), in explaining its rejection of the rule proposed by Peralta, the Seventh Circuit stated that "the differences between what must be proved to invoke the hearsay exception and what must be proved in order to convict a person of the crime of conspiracy, as well as the difference of the burden of proof, mean that neither collateral estoppel nor res judicata automatically bar the use of statements by a person who has been acquitted of the crime of conspiracy." *Id.* at 549 (citing *United States v. Cravero,* 545 F.2d 406, 419 (5th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977)). In reaching this conclusion, the court in *Gil* relied on agency law principles.

> The co-conspirator exception to the hearsay rule ... is merely a rule of evidence founded, to some extent, on concepts of agency law. It may be applied in both civil and criminal cases ... Its rationale

is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not.

*Id.* (quoting *United States v. Trowery,* 542 F.2d 623, 626 (3d Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977)).

Peralta argues that a person who is determined not to be a member of a conspiracy in a criminal proceeding "can no longer be said to be an agent of another person." Thus, he urges this court not to follow those circuits that allow admission under Rule 801(d)(2)(E) of the statements of a person acquitted of conspiracy charges.

Peralta's argument confuses the burden of persuasion that is required for the admission of a co-conspirator's statement with the requirement that a person cannot be convicted of the crime of conspiracy unless his or her guilt is proved beyond a reasonable doubt. This distinction was recognized by the court in *Gil:*

> The substantive criminal law of conspiracy, though it obviously overlaps in many areas, simply has no application to this evidentiary principle. Thus, once the existence of a joint venture for an illegal purpose, or for a legal purpose using illegal means, and a statement made in the course of and in furtherance of that venture have been demonstrated by a preponderance of the evidence, it makes no difference whether the declarant or any other "partner in crime" could actually be tried, convicted and punished for the crime of conspiracy.

604 F.2d at 549–50.

In *United States v. Layton,* 855 F.2d 1388 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989), we held that statements made by a party to an agreement were admissible under Rule 801(d)(2)(E), notwithstanding the fact the venture could not be prosecuted as a criminal conspiracy because it had a lawful objective. *Id.* at 1400.

After reviewing the underpinnings of the co-conspirator exception in the law of common enterprise, joint venture, and agency, we stated:

> If the appropriate basis for admitting the statements of a confederate is that his participation in a common enterprise with the defendant makes him an agent of the accused, then the goal or objective of the common enterprise would appear to be irrelevant. The critical inquiry is simply whether the confederate was acting in his capacity as an agent of the defendant when he uttered the statements sought to be admitted....

*Id.* at 1399.

■ Our adoption of the principles of the agency law in *Layton,* to support the admission of a co-conspirator's declaration, is consistent with the reasoning employed by those circuits that have ruled that acquittal of criminal conspiracy charges does not affect the admissibility of such evidence pursuant to Rule 801(d)(2)(E). Accordingly, we hold that if a district court is persuaded by a preponderance of the evidence that the declarant and the accused were members of a conspiracy, the declarant's statement is admissible notwithstanding the fact that the court concludes that the evidence is insufficient under the reasonable doubt standard to support a *conviction* of the declarant of the crime of conspiracy.

Peralta also attacks the admission of Contrera's statements on the ground that "there was no independent evidence of Rolando Peralta's participation in the conspiracy, absent the alleged co-conspirator statements of Socorro Contreras." We disagree.

■ In *United States v. Silverman,* 861 F.2d 571 (9th Cir.1988), we held that a co-conspirator's statement, offered to show the defendant's participation in a conspiracy as a foundation for admission of the extrajudicial declaration in evidence, must be supported by independent proof. *Id.* at 577. The record in this matter contains sufficient independent evidence that Peralta was a member of the conspiracy to satisfy the *Silverman* rule. Indiana Robleto and Maria Robleto testified that the kidnap-

pers demanded that the ransom money and the quit claim deed be delivered to "Rolando." The district court did not abuse its discretion in concluding that Contreras' statements were corroborated by sufficient independent evidence to justify their admission into evidence under Rule 801(d)(2)(E).

Peralta further contends that the admission of the co-conspirator's statements violated his right of confrontation and to cross-examine his accusers under the sixth amendment. This argument is without merit.

In *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Supreme Court held that "the requirements for admission under Rule 801(d)(2)(E) are identical to the requirements of the Confrontation Clause." *Id.* at 182, 107 S.Ct. at 2782. "When a coconspirator's statement satisfies the requirements for admission under [the Rule], it satisfies the requirements of the confrontation clause, as well." *United States v. Layton*, 855 F.2d 1388, 1401 (9th Cir.1988) (citing *Bourjaily*, 483 U.S. at 182, 107 S.Ct. at 2782).

### III

### Impact Of The Court's Instruction On Admissibility Of Statements Of Co–Conspirators

Peralta asserts that the district court committed reversible error by instructing the jury that:

> Whenever it appears *beyond a reasonable doubt* from the evidence in a case that a conspiracy existed, and that a defendant was one of the members, then the statements thereafter knowingly made, and the acts thereafter knowingly done by any person found to be a member *by a preponderance of the evidence* may be considered by the jury as evidence in the case as to the defendant found to have been a member, even

though the statements and acts may have occurred in the absence or without the knowledge of the defendant, provided such statements and acts were knowingly made and done during the continuance of such conspiracy, and in furtherance of some object or purpose of the conspiracy.

Peralta argues that the jury should have been instructed that a co-conspirator's declaration cannot be considered unless the evidence shows beyond a reasonable doubt that the declarant was a member of the conspiracy.

 Peralta concedes that a trial court may admit a co-conspirator's statements if it is persuaded by a preponderance of the evidence that the declarant and the defendant were members of a conspiracy. Peralta also concedes that once the judge determines that the hearsay statements are admissible under the co-conspirator exception, the jury should not be instructed that it must determine admissibility. *United States v. Lutz*, 621 F.2d 940, 946 n. 2 (9th Cir.1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981).

 The district court instructed the jury on the admissibility of a co-conspirator's declaration in response to the erroneous statement by Peralta's trial counsel during closing argument that the jury must be persuaded beyond a reasonable doubt that such evidence is *admissible* before it can be considered against the accused. Thus, any error in admonishing the jury concerning the admissibility of evidence was invited by Peralta's attorney. An appellant cannot argue on appeal instructional error which he or she invited. *See United States v. Alexander*, 695 F.2d 398, 402 (9th Cir.1982). The jury was properly instructed on the Government's duty to prove each element of the crime of conspiracy beyond a reasonable doubt. Peralta has failed to demonstrate that the instruction was harmful. *See Lutz*, 621 F.2d at 946 n. 2 (an instruction on admissibility of evi-

dence while erroneous can be beneficial to the defendant).

## VI

### Admissibility Of Expert Testimony Concerning The "Stockholm Syndrome"

Peralta asserts that the district court abused its discretion in allowing expert testimony by Special Agent Gary Wayne Fusilier, a clinical psychologist employed by the Federal Bureau of Investigation. Peralta does not claim that it was inappropriate to allow Fusilier to give expert testimony concerning the "Stockholm Syndrome." [1] Instead, he argues that the testimony was improperly used to prove that Maria Robleto had in fact been taken hostage, and to vouch for her credibility.

 We review the admission of expert testimony for abuse of discretion. *United States v. Aguon*, 851 F.2d 1158, 1171 (9th Cir.1988).

A qualified expert witness may testify if the witness' "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed.R.Evid. 702. Testimony is admissible under Rule 702 if the subject matter at issue is beyond the common knowledge of the average layman, the witness has sufficient expertise, and the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.

*United States v. Winters*, 729 F.2d 602, 605 (9th Cir.1984) (citations omitted). In *Winters*, we upheld the admission of expert testimony concerning the psychological impact of post-traumatic stress disorder, to explain the behavior of two women who failed to take advantage of opportunities to escape or summon help after they were kidnapped and forced into prostitution. *Id.*

Peralta argues that this court should apply the California Supreme Court's holding in *People v. Bledsoe*, 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984) to this matter. Peralta's reliance on *Bledsoe* is misplaced. In *Bledsoe*, the court held that

evidence of expert testimony of rape trauma syndrome was inadmissible to prove the fact of rape. 36 Cal.3d at 251, 681 P.2d at 301, 203 Cal.Rptr. at 460. The California Supreme Court analyzed its holding as follows:

In a number of the cases in which the issue has arisen, the alleged rapist has suggested to the jury that some conduct of the victim after the incident—for example, a delay in reporting the sexual assault—is inconsistent with her claim of having been raped, and evidence on rape trauma syndrome has been introduced to rebut such an inference by providing the jury with recent findings of professional research on the subject of a victim's reaction to sexual assault. As a number of decisions have recognized, *in such a context expert testimony on rape trauma syndrome may play a particularly useful role by disabusing the jury of some widely held misconceptions about rape and rape victims, so that it may evaluate the evidence free of the constraints of popular myths.*

In the present case, however, the evidence was not admitted for any such purpose. Here, the victim promptly reported the attack, immediately exhibited the severe emotional reaction that the normal lay juror would associate with rape and suffered bruises and other physical injuries that corroborated her claim that she had been violently assaulted. As far as our review of the record reveals, *defendant made no claim that [the victim's] conduct or demeanor after the incident provided any basis for the jury to infer that she had not been raped.*

36 Cal.3d at 247–48, 681 P.2d at 298–99, 203 Cal.Rptr. at 457–58 (emphasis added) (citations omitted).

In opposing the admission of the expert's testimony Peralta's counsel argued to the district court: "We are saying that because of her actions in this case being so unusual, they are inconsistent with, in fact, a kid-

---

1. The Stockholm Syndrome has been described as "a psychological phenomenon whereby a hostage develops positive feelings for his or her

captor." *United States v. Chancey*, 715 F.2d 543, 547 (11th Cir.1983).

napping having occurred...." The testimony of the expert witness was admissible to explain Maria Robleto's conduct *after* she was kidnapped and held hostage. It was not offered to prove that she was kidnapped. The district court did not abuse its discretion in concluding that the expert testimony would assist the jury in understanding the evidence.

## V

### Jurisdiction Over Hostage Taking Of A Nicaraguan Citizen In Mexico

Peralta asserts that the district court erred in denying his motion to dismiss the second count of the indictment which charged him with hostage taking in violation of 18 U.S.C. § 1203. He argues that since the victim was a citizen of Nicaragua, kidnapped in Mexico, the district court had no jurisdiction. This contention is without merit. We review de novo a district court's assumption of jurisdiction. *United States v. Layton,* 855 F.2d 1388, 1394 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

Peralta concedes that "[u]nder the Constitution, Congress does have the power to legislate overseas and define and punish offenses committed on foreign soil under certain circumstances." *See Chua Han Mow v. United States,* 730 F.2d 1308, 1311–12 (9th Cir.1984) (discussing appropriateness of extraterritorial jurisdiction for drug offenses), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985). Peralta argues that "[i]n the present case, the absence of an American National as the victim of the hostage-taking and the absence of any evidence indicating that the hostage-taking was related to international terrorism, means that a United States federal district court did not have jurisdiction to prosecute the kidnapping of the Nicaraguan citizen which occurred in Mexico." The record does not support this contention.

The language of the statute in question makes clear that it is an offense punishable in the district court to kidnap a foreign national outside the United States. To fall within the scope of the section, the act must have been done "in order to compel a third person ... to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained...." 18 U.S.C. § 1203(a). If the offense occurs outside the United States, "the offender or the person seized or detained [must be] a national of the United States" or the offender must be "found in the United States" or the hostage taking must have been done to compel an act or omission by the Government of the United States. 18 U.S.C. § 1203(b)(1)(A)–(C).

The indictment alleged that Peralta directed the kidnapping of Maria Robleto in Mexico in order to compel her mother, a resident of California, to surrender her interest in certain California real estate and return money owed to him. It is not disputed that at all relevant times Peralta was a national of the United States, and was found and arrested in the United States. Thus, the acts alleged were within the scope of Section 1203 and the district court properly exercised jurisdiction.

AFFIRMED.