985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pablo ESPINO-LLAMAS, Defendant-Appellant.
 No. 92-30086.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1993.*
Decided Feb. 8, 1993.
 
 Appeal from the United States District Court for the Western District of Washington; No. CR-91-1075-02-JET, Jack E. Tanner, District Judge, Presiding.
 W.D.Wash.
 AFFIRMED.
 Before TANG, KOZINSKI and FERNANDEZ, Circuit Judges:
 
 
 1
 MEMORANDUM**
 
 
 2
 Pablo Espino-Llamas appeals from a jury conviction for conspiracy to distribute heroin, 21 U.S.C. § 846, and possession with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B).
 
 
 3
 A. Espino-Llamas argues that the district court erred in denying his motion to suppress statements he made after his arrest. Specifically, Espino-Llamas contends that because the officers lacked probable cause to arrest him, his statements made while in custody (even though Miranda warnings had been given) were "tainted" by the illegal arrest.
 
 
 4
 But Espino-Llamas' arrest wasn't illegal. The test for probable cause to arrest is whether "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing or is about to commit a crime." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990); accord Michigan v. DeFillipo, 443 U.S. 31, 37 (1979). Undercover agent Moren had arranged the purchase of heroin at co-defendant Hulbert's residence between 5:30 and 6:00 p.m. on August 28. RT I-A at 23-24. Hulbert represented to agent Moren that his source lived two hours away, in Yakima. Id. at 24. The officers knew from a confidential informant that Hulbert's source was a Hispanic male named Pablo who lived in Yakima and drove a blue Camaro. CR 37 at 2-3; id. exh. 3 at 6. At 5:15 p.m. on the assigned day, a Hispanic male in a blue Camaro arrived at Hulbert's residence. RT II at 16. Shortly thereafter Hulbert exited the house and sold the drugs to the agent, at which time he was arrested. RT I-A at 25-26; RT I-B at 14-15.
 
 
 5
 While Hulbert was being arrested, the police executed a search warrant in Hulbert's house. Once inside, they found no sign of the Hispanic male, but they did find a side door to the house ajar. CR 37 exh. 3 at 5. Hiding under the porch of the house next to Hulbert's, police found a Hispanic male. The police arrested the man, who later turned out to be Pablo Espino-Llamas.
 
 
 6
 This was not, as Espino-Llamas urges, an arrest based on mere "proximity of the defendant near the scene of the crime." Appellant's Opening Brief at 5. The officers had received a report from a confidential informant linking a Hispanic male to the drug traffic being conducted in Hulbert's house, and the details--the man's ethnic background and the blue Camaro--had all been corroborated by the events of the day. The officers also knew from Agent Moren's arrangement with Hulbert that a drug transaction had just taken place at the house. They knew, too, that someone had fled the house, and that someone--probably the same person--had hidden under a neighbor's porch. The police had probable cause to arrest the defendant. See United States v. Del Vizo, 918 F.2d 821, 826 (9th Cir.1990) (noting "the practice followed by some drug dealers of hiding until the deal is consummated so that they can claim to be innocent bystanders in the event of governmental interference") (quotation marks omitted).[1]
 
 
 7
 Because the arrest was valid, and Espino-Llamas was advised of his Miranda rights, the incriminating statements he made to the police were admissible against him. After being advised of his Miranda rights, Espino-Llamas was asked if he would waive his rights and answer questions. He responded "yes" and proceeded to make statements. Because the statements were not extracted by physical or psychological coercion or by improper inducement, we find that Espino-Llamas' statements were made voluntarily. See United States v. Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988) (a statement is involuntary if extracted by threats, violence or any improper influence). The district court didn't err in denying the motion to suppress.
 
 
 8
 B. Espino-Llamas challenges the district court's conspiracy instruction. He makes several discrete arguments against Instruction # 10: It broadened the charge of the indictment, allowed a nonunanimous verdict, omitted the essential element of mens rea and failed to require the jury to consider only the defendant's acts or statements in determining whether he had joined the conspiracy. But Espino-Llamas raised only one objection to Instruction # 10 below: "The instruction as given eliminates the requirement that an overt act be proved." RT II at 118 (emphasis added). The rationale for requiring a contemporaneous objection is to afford the district court an opportunity to cure defective instructions in the first instance. We therefore treat an argument on appeal on grounds different from those raised below as if no objection had been made at all. When no objection is raised to a jury instruction, we review it under the deferential "plain error" standard. United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991).
 
 
 9
 We have carefully reviewed the court's Instruction # 10, which we have considered not in isolation but in connection with the court's instructions as a whole. United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991). It correctly stated the elements of a conspiracy conviction under 21 U.S.C. § 846: the existence of an agreement to do something illegal, one or more overt acts in furtherance of that purpose and an intention to commit the underlying offense. United States v. Medina, 940 F.2d 1247, 1250 (9th Cir.1991); United States v. Magana-Olivera, 917 F.2d 401, 409 (9th Cir.1990).
 
 
 10
 The objections which Espino-Llamas raises for the first time on appeal are meritless. Espino-Llamas argues Instruction # 10, ER 8, broadened the charge of the indictment by allowing conviction based on agreement between any two other conspirators. But like the indictment itself, the instruction required the government to prove the existence of an agreement between Espino-Llamas and the conspirators. Furthermore, it incorporated the indictment by reference and a copy of the indictment was appended to the instructions, which made it doubly certain that the jury wouldn't convict on facts other than those described in the indictment.
 
 
 11
 Instruction # 10 plainly stated the government had to prove "the defendant" joined the conspiracy. There was no risk of a nonunanimous verdict based on each juror convicting on different agreements between conspirators other than Espino-Llamas, because the jury was properly focused on Espino-Llamas' involvement.
 
 
 12
 Pointing to isolated portions of the instruction, Espino-Llamas also argues that Instruction # 10 omitted the element of mens rea. The instruction referred to the requirement that the defendant "willfully participat[ed] in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy" (emphasis added). The court also instructed the jury that it "must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy." Furthermore, the district court admonished the jury that if the defendant acted without knowledge of the conspiracy, he did not become a conspirator simply by taking independent action that furthered the conspiracy. The only requirement is "that the jury find that, at a minimum, the defendants knowingly entered the conspiracy. The law in this circuit requires no more." United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992). The court's instruction passes this test.
 
 
 13
 Finally, Espino-Llamas argues that the district court erred by not including his Proposed Instruction # 13, which would have forbidden the jury from considering the statements of coconspirators to determine that he participated in the conspiracy. See ER 5. The rule in this circuit is exactly the opposite. Once a district court admits into evidence statements of coconspirators, making the implicit preliminary finding that a conspiracy exists, the court shouldn't instruct jurors to disregard the statements of those conspirators. United States v. Peralta, 941 F.2d 1003, 1008 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992).
 
 AFFIRMED
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In concluding there was probable cause to arrest we don't rely on the misleading representations in the government's brief. The government asserts that Espino-Llamas' "hiding ... behind a garbage can which contained large amounts of currency and car keys, and giving false information to the officers" helped establish probable cause to arrest. See Brief for Plaintiff-Appellee at 7-8. But when the police arrested Espino-Llamas, they weren't aware that he had lied about his identity, nor were they aware that he had hidden his wallet and car keys. These things weren't discovered until after his arrest. RT I-A at 10-15. It's axiomatic that information discovered subsequent to arrest may not be used to justify the arrest; probable cause must be determined based upon "the facts and circumstances within the arresting officer's knowledge." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989) (emphasis added). Making such misrepresentations as to the state of the record is conduct unbecoming an officer of the court, least of all an Assistant United States Attorney. Nor does this inspire the court's confidence in the United States Attorney's office for the Western District of Washington, which bears the responsibility for making sure that assistants resist the temptation to overreach