28 F.3d 76
 16 ITRD 1914, 24 Envtl. L. Rep. 21,263
 EARTH ISLAND INSTITUTE, a California nonprofit corporation;
Marine Mammal Fund, a California corporation;
David R. Brower, Plaintiffs-Appellees,
v.
Ronald H. BROWN,* Secretary of Commerce, et
al., Defendants-Appellants,
and
American Tunaboat Association; Joseph J. Medina, Jr. and
Manuel A. Silva, Defendants-Intervenors.
 Nos. 92-15126, 92-15387.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted August 10, 1993.
Opinion Filed March 3, 1994.
Opinion Withdrawn June 28, 1994.
Decided June 28, 1994.
 
 Martin W. Matzen, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.
 Joshua R. Floum and Deborah A. Sivas, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Northern California.
 Before: SNEED, POOLE, and TROTT, Circuit Judges.
 
 
 1
 Opinion by Judge POOLE.
 
 ORDER
 
 2
 The Opinion filed March 3, 1994 is WITHDRAWN.
 
 OPINION
 POOLE, Circuit Judge:
 
 3
 Appellants Secretary of Commerce, Administrator of the National Oceanic and Atmospheric Association, Assistant Administrator of the National Marine Fisheries Service, and Secretary of the Treasury appeal the district court's grant of a preliminary injunction in favor of plaintiffs Earth Island Institute, the Marine Mammal Fund, and David R. Brower. Because we find the district court lacked jurisdiction to issue such an injunction, we reverse.
 
 
 4
 * On April 12, 1988, plaintiffs filed suit seeking to require the government to enforce the Marine Mammal Protection Act (MMPA), 16 U.S.C. Secs. 1361-1406. On August 26, 1991, plaintiffs moved for partial summary judgment and a preliminary and permanent injunction regarding the government's failure to implement bans on importation of tuna from "secondary" or "intermediary nations" as required by 16 U.S.C. Sec. 1371(a)(2)(C).[1] The district court entered an order granting the motion for preliminary injunction but denying the motions for summary judgment and permanent injunction. Earth Island Institute v. Mosbacher, 785 F.Supp. 826, 828 (N.D.Cal.1992).
 
 
 5
 Appellants argue that under 28 U.S.C. Sec. 1581(i)(3), exclusive subject matter jurisdiction over this dispute is vested in the Court of International Trade (CIT), and that the district court thus lacked jurisdiction to enter the preliminary injunction. This court reviews the district court's jurisdiction de novo. United States v. Peralta, 941 F.2d 1003, 1010 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1484, 117 L.Ed.2d 626 (1992).
 
 II
 Under 28 U.S.C. Sec. 1581:
 
 6
 (i) ... the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
 
 
 7
 . . . . .
 
 
 8
 (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety.
 
 
 9
 We must decide whether plaintiffs' MMPA suit to enforce an import ban absent required government certifications is an action which arises out of a law "providing for embargoes."
 
 
 10
 In K Mart Corp. v. Cartier, Inc., 485 U.S. 176, 184, 108 S.Ct. 950, 956, 99 L.Ed.2d 151 (1988), the Supreme Court addressed the meaning of 'embargo' as that term is used in 28 U.S.C. Sec. 1581, and held that the statute should be construed using the "ordinary meaning" of the word. Thus, "[a]n embargo is a '[g]overnment order prohibiting commercial trade with individuals or businesses of other nations.' It is '[a] policy which prevents goods from entering a nation' and which 'may be imposed on a product or on an individual country.' " 485 U.S. at 184, 108 S.Ct. at 956 (citations omitted). The Court concluded that "the meaning that Congress apparently adopted in the statutory language ... is a governmentally imposed quantitative restriction--of zero--on the importation of merchandise." Id. at 185, 108 S.Ct. at 957. Examples of embargoes "for reasons other than the protection of public health or safety" are prohibitions of importation of obscene pictures, lottery tickets, and articles for causing unlawful abortion, 15 U.S.C. Sec. 1397, importation of goods from Cuba, 22 U.S.C. Sec. 2370(a), importation of switchblade knives, 15 U.S.C. Secs. 1241-1244, and fur-seal or sea-otter skins, 19 C.F.R. Sec. 12.60 (1987). 485 U.S. at 184, 108 S.Ct. at 956.
 
 
 11
 At the same time, the Court made it clear that the term 'embargo' does not, for purposes of Sec. 1581(i), encompass all importation prohibitions, but rather names a subclass of importation prohibitions. The holding of K Mart, for instance, is that 19 U.S.C. Sec. 1526, which makes it "unlawful to import into the United States any merchandise of foreign manufacture" bearing a trademark owned by a U.S. citizen or corporation, did not impose an embargo. The Court reasoned that:
 
 
 12
 [a]n importation prohibition is not an embargo if rather than reflecting a governmental estriction on the quantity of a particular product that will enter, it merely provides a mechanism by which a private party might, at its own option, enlist the Government's aid in restricting the quantity of imports in order to enforce a private right.
 
 
 13
 485 U.S. at 185, 108 S.Ct. at 957. The Court also explained that regulations which prohibit the importation of unlicensed or untagged dairy products and uninspected meat products do not constitute embargoes. Id. at 187, 108 S.Ct. at 958.
 
 
 14
 The government argues that under the plain meaning of the term 'embargo', the prohibition on importation of tuna constitutes an embargo. The government points to the fact that Earth Island, as well as the district court and Congress itself, has throughout the preceding litigation referred to the importation ban as an embargo. However, this fact is not itself dispositive, given that the import prohibition in K Mart was likewise labelled an embargo during debate in Congress. K Mart, 485 U.S. at 192, 108 S.Ct. at 960-61 (Scalia, J., dissenting) (quoting 62 Cong.Rec. 11603 (1922) (remarks of Sen. Kellogg)).
 
 
 15
 Earth Island argues that the ban on importation is not an embargo because it establishes certain conditions precedent to the importation of some types of tuna from some nations, but otherwise allows the unlimited importation of any and all tuna that satisfies such conditions of entry. Earth Island analogizes to the inspection, tagging, and licensing requirements on imported meat and dairy products discussed by the Supreme Court in K Mart. 485 U.S. at 187, 108 S.Ct. at 958.
 
 
 16
 The Supreme Court's list of examples indicates to the contrary. The prohibition on the importation of fur-seal or sea-otter skins, for instance, also forbids entry to those items unless they are "officially marked and certified" as required by statute. 19 C.F.R. Secs. 12.60, 12.61. The Court nevertheless cites this prohibition as a paradigmatic embargo. Id. at 184, 108 S.Ct. at 956-57.
 
 
 17
 Even more to the point, we recently rejected a similar such argument under a nearly identical statute in Earth Island Institute v. Christopher, 6 F.3d 648 (9th Cir.1993). Christopher concluded that 16 U.S.C. Sec. 1537(b), which bans the importation of shrimp or shrimp products harvested with commercial fishing technology that might harm sea turtles absent a certification by the government that the importing nation meets specified safety standards, is a law providing for an embargo. Id. at 652. The MMPA, like that statute and unlike the statute at issue in K Mart, involves a "governmentally imposed quantitative restriction--of zero--on the importation of merchandise." Id. (quoting K Mart, 485 U.S. at 185, 108 S.Ct. at 957). It therefore is a statute providing for an embargo under the ordinary meaning of that term.
 
 
 18
 Earth Island offers one additional argument for why the CIT should not have exclusive jurisdiction. It contends that the 1980 amendments which included the adoption of Sec. 1581(i) were never intended to expand the CIT's jurisdiction beyond adjudicating trade matters and other traditional areas. Thus, CIT's jurisdiction should be interpreted functionally and limited to areas in which it has developed expertise.
 
 
 19
 The legislative history suggests otherwise. The Customs Courts Act which contained Sec. 1581 was designed to "clarify the present status, jurisdiction, and powers of the Customs Court." H.R.Rep. No. 96-1235, 96th Cong., 2d Sess. 18, reprinted in 1980 U.S.C.C.A.N. 3729, 3731. This need for clarity arose from ongoing confusion over the precise boundary between CIT and district court jurisdiction. Admittedly, appellees' functional approach might in some circumstances make sense. But if Congress has articulated a clear jurisdictional line, it is not within the power of this court to choose another basis for determining jurisdiction--and to do so here would defeat the very clarity the underlying act sought to achieve.
 
 
 20
 Moreover, the Supreme Court has already concluded that Sec. 1581 extends jurisdiction to all kinds of embargoes, not just those rooted in trade policy or import transactions. K Mart, 485 U.S. at 184, 108 S.Ct. at 956-57. We have upheld jurisdiction over an embargo against shrimp products aimed to protect sea turtles, and in doing so, we have rejected these same functional arguments. Christopher, 6 F.3d at 651-52.
 
 III
 
 21
 Earth Island's suit under the MMPA is an action arising under a law providing for embargoes. As such, it is reserved to the exclusive jurisdiction of the CIT. The district court lacked jurisdiction to enter a preliminary injunction in this case. Accordingly, that injunction is VACATED. This case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Ronald H. Brown, the current Secretary of Commerce, is substituted for former Secretary Robert A. Mosbacher. See Fed.R.App.P. 43(c)(1)
 
 
 [1]
 Section 1371(a)(2)(C) reads as follows:
 (2) .... The Secretary of the Treasury shall ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards. For purposes of applying the preceding sentence, the Secretary--
 ....
 (C) shall require the government of any intermediary nation to certify and provide reasonable proof to the Secretary that it has not imported, within the preceding six months, any yellowfin tuna or yellowfin tuna products that are subject to a direct ban on importation to the United States under subparagraph (B).