**EARTH ISLAND INSTITUTE, a California nonprofit corporation; Todd Steiner, Plaintiffs–Appellants,**

v.

**Warren CHRISTOPHER,[*] Secretary of State, et al., Defendants–Appellees,**

and

**National Fisheries Institute, Inc., Defendant–Intervenor–Appellee.**

No. 92–16544.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1993.

Decided Oct. 1, 1993.

---

[*] Warren Christopher, the current Secretary of State, is substituted for former Secretary James A. Baker, III. *See* Fed.R.App.P. 43(c)(1).

Deborah A. Sivas, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for plaintiffs-appellants.

Albert M. Ferlo, Jr., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for defendants-appellees.

Eldon V.C. Greenberg, Garvey, Schubert & Barer, Washington, DC, for intervenor-appellee National Fisheries.

Before: SCHROEDER and BRUNETTI, Circuit Judges, and KING,** District Judge.

SCHROEDER, Circuit Judge:

Earth Island Institute appeals the district court's dismissal for lack of jurisdiction of its lawsuit to enforce the provisions of section 609 of Public Law 101–162, 103 Stat. 1037, which is codified in 16 U.S.C. § 1537 (Supp. 1993). The purpose of the statute is to promote the international protection of sea turtles.

Sea turtles are often trapped in the nets used in commercial shrimp trawl fishing and are then vulnerable to drowning. In response to this problem, scientists in this country developed "turtle excluder devices," ("TED's") to prevent the accidental drowning of turtles. Federal regulations mandated the use of TED's in this country. *See* 52 Fed. Reg. 24,244 (June 29, 1987). The goal of section 609 is to encourage foreign shrimp trawlers to use similar methods to protect sea turtles.[1]

---

** Honorable Samuel P. King, Senior U.S. District Judge for the District of Hawaii, sitting by designation.

1. Section 609 states:

(a) The Secretary of State, in consultation with the Secretary of Commerce, shall, with respect to those species of sea turtles the conservation of which is the subject of regulations promulgated by the Secretary of Commerce on June 29, 1987—

(1) initiate negotiations as soon as possible for the development of bilateral or multilateral agreements with other nations for the protection and conservation of such species of sea turtles;

(2) initiate negotiations as soon as possible with all foreign governments which are engaged in, or which have persons or companies engaged in, commercial fishing operations which, as determined by the Secretary of Commerce, may affect adversely such species of sea turtles, for the purpose of entering into bilateral and multilateral treaties with such countries to protect such species of sea turtles;

(3) encourage such other agreements to promote the purposes of this section with other nations for the protection of specific ocean and land regions which are of special significance to the health and stability of such species of sea turtles;

The statute has two subsections. Subsection (a) requires the Secretary of State to initiate negotiations with foreign countries to develop treaties to protect sea turtles, and to report to Congress about such negotiations. Subsection (b) requires limitations on the importation of shrimp from nations that have not moved to protect sea turtles. If the President certifies that a country has undertaken measures to protect turtles, shrimp imports from that country are not banned.

In this case, Earth Island Institute and Todd Steiner sought enforcement of the statute in the district court. Earth Island Institute is a non-profit corporation devoted to the conservation of the world's marine and terrestrial ecosystems. It established a Sea Turtle Restoration Project in 1989, in order to protect endangered species of sea turtles. Appellant Todd Steiner is the director of the Sea Turtle Restoration Project. Earth Island and Steiner brought suit against the Secretary of State, the Secretary of Commerce, the Assistant Secretary of State for Oceans and International Environmental and Scientific Affairs, and the Assistant Administrator of the National Marine Fisheries Service.

Plaintiffs alleged that defendants did not properly certify that foreign nations have regulatory programs that comply with the Act, as required by section 609(b). Plaintiffs alleged further that defendants had not banned the importation of shrimp and shrimp products from nations whose fishing technologies continue to harm sea turtles. Plaintiffs also alleged that defendants did not initiate treaty negotiations with foreign governments to protect sea turtles, as required by section 609(a) of the Act.

The district court ruled that it did not have jurisdiction over the section 609(b) claims because those claims involved "embargoes" or "quantitative restrictions" on the importation of products into the United States. Such matters fall within the exclusive jurisdiction of the United States Court of International Trade ("CIT"), under 28 U.S.C. §§ 1581(i)(3) and (4). The district court ruled that it could not adjudicate the section 609(a) claims because it lacked subject matter jurisdiction: "The claims raise issues relating to the foreign affairs function, which rests within the exclusive province of the Executive Branch."

We affirm because we conclude that exclusive jurisdiction lies with the CIT on the section 609(b) claim," and that section 609(a) violates the separation of powers.

(4) initiate the amendment of any existing international treaty for the protection and conservation of such species of sea turtles to which the United States is a party in order to make such treaty consistent with the purposes and policies of this section; and

(5) provide to the Congress by not later than one year after the date of enactment of this section [Nov. 21, 1989]

(A) a list of each nation which conducts commercial shrimp fishing operations within the geographic range of distribution of such sea turtles;

(B) a list of each nation which conducts commercial shrimp fishing operations which may affect adversely such species of sea turtles; and

(C) a full report on—

(I) the results of his efforts under this section; and

(II) the status of measures taken by each nation listed pursuant to paragraph (A) or (B) to protect and conserve such sea turtles.

(b)(1) **In general.**—The importation of shrimp or products from shrimp which have been harvested with commercial fishing technology which may affect adversely such species of sea turtles shall be prohibited not later than May 1, 1991, except as provided in paragraph (2).

(2) **Certification procedure.**—The ban on importation of shrimp or products from shrimp pursuant to paragraph (1) shall not apply if the President shall determine and certify to the Congress not later than May 1, 1991, and annually thereafter that—

(A) the government of the harvesting nation has provided documentary evidence of the adoption of a regulatory program governing the incidental taking of such sea turtles in the course of such harvesting that is comparable to that of the United States; and

(B) the average rate of that incidental taking by the vessels of the harvesting nation is comparable to the average rate of incidental taking of sea turtles by United States vessels in the course of such harvesting; or

(C) the particular fishing environment of the harvesting nation does not pose a threat of the incidental taking of such sea turtles in the course of such harvesting.

*Section 609(b)—District Court or Court of International Trade Jurisdiction?*

The CIT was created in the Customs Courts Act of 1980, as the successor to the Customs Court. Pub.L. No. 96–417, 94 Stat. 1727 (1980). The CIT is a court of the United States for all purposes of Title 28. 28 U.S.C. § 451. Under the 1980 Act, the CIT retains the jurisdiction of the prior Customs Court, which had exclusive jurisdiction over a wide range of trade matters. Section 1581(i) of the 1980 Act also expanded the jurisdiction of the CIT beyond that of the earlier Customs Court.[2] In this case, the district court ruled that the CIT had exclusive jurisdiction under § 1581(i)(3), which gives the CIT exclusive jurisdiction over "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." The Supreme Court has addressed the scope of the jurisdiction of the CIT under § 1581(i) in *K Mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988). We hold that under *K Mart,* the CIT has exclusive jurisdiction over this lawsuit.

In *K Mart,* the Coalition to Preserve the Integrity of American Trademarks, a private association of United States trademark owners, filed a lawsuit in federal district court to challenge a regulation by the Secretary of the Treasury that permitted the importation of gray-market goods. Gray-market goods are foreign-manufactured goods bearing a U.S. trademark that are imported without the consent of the trademark owner. Plaintiffs sought a declaration that the regulation, which allowed exceptions to the ban on gray-market imports, was invalid. Plaintiffs also sought an injunction against enforcement of

**2.** Section 1581(i) provides, in relevant part:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for

the regulation under section 526 of the Tariff Act, 19 U.S.C. § 1526. The defendants argued that the CIT had exclusive jurisdiction over the lawsuit. The district court retained jurisdiction, and the D.C. Circuit affirmed. *Coalition to Preserve the Integrity of American Trademarks v. United States,* 790 F.2d 903, 907 (D.C.Cir.1986). The Supreme Court agreed that the CIT did not have jurisdiction over the case, because there was no "embargo" within the meaning of § 1581(i)(3).

Appellants make two arguments under *K Mart.* First, they argue that the CIT does not have jurisdiction because the ban on shrimp imports is an environmental and not a trade matter, and as such is beyond the CIT's expertise. Second, they argue that the ban is not an "embargo" under the Supreme Court's definition of embargo in *K Mart.*

■ However, appellants misinterpret *K Mart* on both counts. In *K Mart,* the Supreme Court rejected the D.C. Circuit's reasoning that § 1581(i)(3) refers only to embargoes arising out of trade policy. The Court gave an expansive interpretation of the scope of CIT jurisdiction by ruling that under § 1581(i) "trade policy is not the sole, nor perhaps even the primary, purpose served by embargoes." *K Mart,* 485 U.S. at 184, 108 S.Ct. at 956. The Supreme Court reasoned that embargoes are imposed for a broad range of purposes, including public health, safety, morality, foreign affairs interests, law enforcement, and ecology. The Court expressly cited a regulation that prohibits the importation of sea otters as an example of an embargo in the field of ecology, over which the CIT would have exclusive jurisdiction. 19 C.F.R. § 12.60 (1987).[3]

reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the United States–Canada Free–Trade Agreement and section 516A(g) of the Tariff Act of 1930.

**3.** § 12.60 **Importation prohibited.**

The transportation, importation, sale, or possession of the skins of fur seals or sea otters is

The similarity between that ban on sea otters, and the ban on shrimp products in this case, undermines appellants' argument that the subject matter of this lawsuit is beyond the expertise of the CIT. The prohibitions on shrimp importation for environmental protection in this case clearly fall within the range of CIT jurisdiction identified by the Supreme Court in *K Mart.*

■ Second, appellants' argument that the ban on shrimp imports is not an embargo also fails. Appellants describe the ban on shrimp products as an import restriction, or as a condition precedent to the importation of shrimp products, and therefore not an embargo within the meaning of section 1581(i)(3). However, they misinterpret *K Mart's* definition of embargo. The Supreme Court ruled that there was no embargo in *K Mart* because there was no *governmental* ban on importation. Instead, private parties sought to enforce a private right with governmental assistance. The trademark owners asked the United States to impose a ban on foreign-manufactured goods. Those private parties were "enlist[ing] the Government's aid in restricting the quantity of imports in order to enforce a private right." *Id.* at 185, 108 S.Ct. at 957. Thus, there was no "embargo."

By contrast, here there is clearly a governmental ban that meets the *K Mart* definition of embargo: "The ordinary meaning of 'embargo,' and the meaning that Congress apparently adopted in the statutory language 'embargoes or other quantitative restrictions,' is a governmentally imposed quantitative restriction—of zero—on the importation of merchandise." *Id.* This ban on the importation of shrimp products does not arise from the action of private parties, but is clearly a governmental embargo within the meaning of *K Mart.*

The other authority cited by appellants does not compel a different outcome. *Sneaker Circus, Inc. v. Carter,* 566 F.2d 396 (2d

Cir.1977), was decided before § 1581(i) expanded the jurisdiction of the CIT. Moreover, in *Sneaker Circus,* the Second Circuit ruled that the district court had jurisdiction to hear plaintiffs' challenge to U.S. trade agreements with foreign nations because the dispute would never be ripe for adjudication in the Customs Court. It based this belief on the assumption that the effective enforcement of the trade agreements abroad would obviate the need for parties to file administrative protests in the Customs Court. These conditions are not present in this appeal.

We are bound instead by our opinion in *Cornet Stores v. Morton,* 632 F.2d 96 (9th Cir.1980), *cert. denied,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981), in which we recognized the Customs Court's exclusive jurisdiction over a lawsuit challenging an import duty surcharge imposed under the Trading With the Enemy Act, 50 U.S.C.App. § 5(b). In *Cornet Stores,* we noted that conflicts between exclusive Customs Court jurisdiction and the broad jurisdiction of the district courts should be " 'resolved by upholding the exclusivity of the Customs Court jurisdiction.' " *Id.* at 98 (quoting *Fritz v. United States,* 535 F.2d 1192, 1194 (9th Cir. 1976)). We must uphold that exclusivity here.

### *Section 609(a)—Foreign Affairs*

■ The district court correctly ruled that the section 609(a) claims relate to "the foreign affairs function, which rests within the exclusive province of the Executive Branch under Article II, section 2 of the United States Constitution." The statute's requirement that the Executive initiate discussions with foreign nations violates the separation of powers, and this court cannot enforce it.

The Constitution commits the power to make treaties to the President: "He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur." U.S. Const. Art. II, § 2, cl. 2. The President alone has the authority to negotiate treaties with foreign countries. "Into the field of negotiation the Senate cannot in-

prohibited if such skins were taken contrary to the provisions of section 2 of the act of February 26, 1944 (58 Stat. 100–104) or, the case of such skins taken under the authority of the act or any fur-seal agreement, if the skins are not

officially marked and certified as required by section 2 of the act. Section 16 makes the act inapplicable to skins taken for scientific purposes under a special permit.

trude; and Congress itself is powerless to invade it." *United States v. Curtiss-Wright Corp.*, 299 U.S. 304, 319, 57 S.Ct. 216, 220, 81 L.Ed. 255 (1936); *see also Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir.1975) ("presidential action in the field of foreign affairs is committed to presidential discretion by law").

Appellants argue that their lawsuit merely asks the district court to review and to interpret congressional legislation, a task that properly falls to the judiciary. They ask us to apply "the traditional rules of statutory construction ... to the particular set of facts" of this case, and to rule that the Executive has not complied with the terms of section 609(a). *See Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230, 106 S.Ct. 2860, 2866, 92 L.Ed.2d 166 (1986). They argue that district courts possess jurisdiction over a range of topics that impinge upon foreign relations without violating the separation of powers. Appellants rely on our decision in *Hopson v. Kreps*, 622 F.2d 1375 (9th Cir.1980), and the Second Circuit's decision in *Sneaker Circus, supra.*

However, in those cases, the district courts were not enforcing a statute that directed the executive to negotiate with foreign countries. In *Hopson*, we took jurisdiction to review the validity of regulations issued by the Department of Commerce under the International Whaling Convention Act of 1949, 16 U.S.C. §§ 916–916*l*. *Hopson*, 622 F.2d at 1376. We held that whether the Executive had the authority under an International Whaling Convention to promulgate certain regulations was a justiciable issue, and was not rendered non-justiciable simply because the answer required the interpretation of a treaty. We were asked to interpret the law, not to enforce a statute directing the conduct of foreign relations. In *Sneaker Circus*, the Second Circuit held that there was federal court jurisdiction to determine if trade agreements had been negotiated in compliance with the procedural requirements of the Trade Act. *Sneaker Circus*, 566 F.2d at 398. The court stressed that the challenge was to the "procedures employed by the Executive" and not the "substance of trade agreements." *Id.* at 402.

Likewise, in *Japan Whaling*, the Supreme Court took jurisdiction over an appeal involving the interpretation of a statute that directed the Secretary of Commerce to certify to the President the names of those countries undermining international fishing conservation agreements. The challenge to the Secretary's decision not to certify Japan for its harvesting of whales presented a "purely legal question of statutory interpretation." *Japan Whaling*, 478 U.S. at 230, 106 S.Ct. at 2866. The statute did not direct the President to take any particular action upon receiving such certification.

■ In all three cases above, the courts performed their traditional task of statutory interpretation. Although the statutes touched on foreign affairs, they did not direct the actual conduct of foreign relations. *See Japan Whaling*, 478 U.S. at 229–30, 106 S.Ct. at 2865–66 ("it is 'error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance'") (quoting *Baker v. Carr*, 369 U.S. 186, 211, 82 S.Ct. 691, 707, 7 L.Ed.2d 663 (1969)). By contrast, section 609(a) intrudes upon the conduct of foreign relations by the Executive. Unlike the statutes discussed above, section 609(a) orders the Executive to negotiate and enter into treaties with foreign nations. This court has not and cannot lawfully order the Executive to comply with the terms of a statute that impinges upon power exclusively granted to the Executive Branch under the Constitution. Plaintiffs here ask us to compel the Secretary of State to initiate negotiations with foreign nations on the protection of sea turtles. Because "the Constitution plainly grants the President the initiative in matters directly involved in the conduct of diplomatic" affairs, we cannot enforce the statute. Laurence H. Tribe, *American Constitutional Law* § 4–4, at 219 (2d ed. 1988).

Plaintiffs' claim is not one that is justiciable in any federal court. There is thus no reason to engage in the kind of debate invited by the dissent over the proper interpretation of 28 U.S.C. § 1581(i) (granting exclusive jurisdiction to the Court of International Trade over any cause of action that "arises out of any law of the United States providing for ... (3) embargoes ...") The dissent asserts that subsection "a" of section 609,

relating to treaty negotiations, is part of the same "law" as subsection "b" relating to embargoes for purposes of section 1581. It asserts further that any complaint containing one cause of action relating to an embargo must be heard in its entirety in the CIT, regardless of how many unrelated other causes of action may be alleged in that complaint. We believe this position is not only unsound, but ignores the more fundamental point: subsection (b) deals with a subject within the exclusive jurisdiction of the CIT, while subsection (a) deals with a subject outside the jurisdiction of any federal court. We therefore affirm the judgment of the district court dismissing the complaint.

**AFFIRMED.**

BRUNETTI, Circuit Judge, dissenting in part:

I concur in part 1 of the majority's opinion, dealing with appellants' challenge under section 609(b). I agree that section 609(b) provides for an "embargo or other quantitative restriction" on trade, and that the Court of International Trade has exclusive jurisdiction pursuant to 28 U.S.C. § 1518(i).

I cannot agree with the majority's treatment of the 609(a) claim, however, because I believe we lack jurisdiction over that claim as well.

28 U.S.C. § 1518(i) provides, in relevant part:

> [T]he Court of International Trade shall have exclusive jurisdiction of *any civil action* commenced against the United States, its agencies, or its officers, *that arises out of any law of the United States providing for— ... (3) embargoes or other quantitative restrictions....*

(Emphasis added). In my view, the import of this provision is clear: *any action* against the government commenced under section 609 must be maintained in the CIT. Because that court has exclusive jurisdiction, we have none at all. We cannot pass on the validity, constitutional or otherwise, of section 609(a) in this case.

I do not believe we are free to parse apart the statute to address the one subsection which does not at its core meet the CIT criteria. Even though the 609(a) claim does

not itself seek an embargo or other quantitative restriction, it cannot be disputed that it "arises out of a law (§ 609) providing for embargoes or other quantitative restrictions." Part 1 of the opinion expressly recognizes that section 609 is such a provision.

The majority apparently has concluded that § 609(b) is a "law of the United States providing for ... embargoes," but that subsection (a) of that same provision is an entirely separate "law of the United States" which does not. I disagree with that conclusion.

I fail to see how the statute could have been phrased more explicitly. It directs to the CIT "any civil action commenced against the United States ... that *arises out of any law* of the United States providing for ... embargoes or other quantitative restrictions" (emphasis added). That definition covers this case. If Congress intended § 1581(i) to mean "any action against the United States challenging or supporting an embargo or other quantitative restriction," it easily could have said so. But it did not.

In *Vivitar Corp. v. United States*, 585 F.Supp. 1419 (1984), the Court of International Trade determined that it retained exclusive jurisdiction over the plaintiff's claim. *Id.* at 1426–27. The Federal Circuit Affirmed. 761 F.2d 1552 (Fed.Cir.1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). In that case, Vivitar complained "that Customs Service's administration and enforcement of § 1526(a) and (b) is improper." 761 F.2d at 1558. That section provided in part:

> Merchandise bearing American trade-mark
> (a) Importation prohibited
> Except as provided in subsection (d) of this section, it shall be unlawful to import into the United States any merchandise of foreign manufacture [without written consent of domestic trademark owner].
> (b) Seizure and forfeiture
> Any such merchandise imported into the United States in violation of the provisions of this section shall be subject to seizure and forfeiture for violation of the customs laws.

*Id.* at 1571, appendix. The CIT determined it had jurisdiction over plaintiff's cause of

action pursuant to § 1581(i)(3) because § 1526(a) provided a statutory limit on importation quantity, and satisfied the "quantitative restrictions" prong of § 1581(i)(3). 585 F.Supp. at 1426.[1] Just as in this case, one subsection provided the "embargo provision" (§ 1526(a)), but the other did not. Section 1526(b) only set out what could happen to the goods if imported in violation of the "quantitative restriction" (of zero) contained in subsection (a). The important point is that the CIT looked only to § 1526(a) to find the embargo or quantitative restriction which would support § 1581(i)(3) jurisdiction. It did not examine the subsection (b) forfeiture provision to see whether it, too, satisfied § 1581(i)(3).[2] Just as the CIT, and in affirmance the Federal Circuit, viewed § 1526 as a single "law of the United States" providing for an embargo, so should we view § 609 in this case. *See Vivitar*, 761 F.2d at 1558–59.

This common-sense reading of § 1581 effectuates precisely the result Congress directed in enacting that section in 1980. As set forth in the Senate Report to the statute:

> Because the statutes defining the jurisdiction of the Customs Court (predecessor to the CIT) are so intricate and because international trade problems have become so complex, it has become increasingly more difficult to determine, in advance, whether or not a particular case falls within the exclusive jurisdiction of the Customs Court and is therefore excluded from the jurisdiction of the district courts. The result has been demonstrated by the fact that a significant number of civil actions have been initiated in the district courts only to be dismissed for lack of jurisdiction....
>
> The amended bill attempts to solve this problem by clarifying the existing jurisdictional statutes relating to the United States Customs Court and by *expanding the jurisdiction of the Court* to include any civil actions involving imports and a statute, constitutional provision, treaty, executive agreement or executive order which is directly and substantially concerned with international trade.

*American Ass'n of Exporters & Importers v. United States*, 751 F.2d 1239, 1245 (Fed Cir. 1985), *quoting* S.Rep. No. 466, 96th Cong., at 4–5 (emphasis added in 751 F.2d). Congress plainly intended to expand the jurisdiction of the CIT to include "any civil actions involving imports and a statute." Nowhere in the text of 28 U.S.C. § 1581(i) or in its supporting legislative history have I found any indication that the section confers jurisdiction only over discrete claims explicitly invoking or challenging an embargo. *See generally*, H.R.Rep. No. 96–1235, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.C.C.A.N. 3729–3786. The majority's conclusion that § 1581(i) is so limited is unsupported, and unsupportable.

I read § 1581(i) as conferring to the CIT jurisdiction over whole *civil actions*, not just particular claims. The statute says so unambiguously. Only by applying the statute as it is written will this congressional mandate be carried out.

Finally, the majority has unwittingly erected a massive barrier to future parties, like Earth Island, who seek to *challenge* in this circuit government action under one of the many protective provisions similar to § 609. After today, a plaintiff must dissect his challenge, even before it is brought, so that any claim directly challenging, or seeking enforcement of the applicable embargo provision can proceed in the Court of International Trade. Any other claim, which is not pointed *directly* toward the embargo provision, must be brought in a separate action in the district court.

The case before us today illustrates perfectly why this rule is unworkable: An action challenging or seeking enforcement of a particular regulatory scheme simply cannot be neatly separated into embargo-related and non-embargo-related parts. The very text of sections § 609(a) and (b), for example, reveals that the two sections are tied together. In § 609(a), the Secretaries of State and

---

1. The CIT also held it had jurisdiction under § 1581(i)(4).

2. Although it could be argued that the § 1526(b) forfeiture provision is *closer* to an embargo than § 609(a)'s directive to negotiate, the fact remains that § 1526(b) is not in itself an embargo or quantitative restriction on imports. It merely sets out what may happen to violating goods. The primary lesson of *Vivitar*, however, is that no inquiry into § 1526(b) was required as a predicate to § 1581(i)(3) jurisdiction, regardless of § 1526(b)'s content.

Commerce are directed to initiate negotiations for agreements to protect and conserve sea turtles (§ 609(a)(1)); to negotiate agreements with foreign governments that engage in commercial fishing operations which may adversely affect the sea turtle in order to protect the turtles (§ 609(a)(2)); and to make treaties for the protection and preservation of the species (§ 609(a)(4)). By November 21, 1989, the Secretaries are to give Congress a list of nations conducting commercial fishing operations within the regions inhabited by the turtles; designate which nations will adversely affect this species; and set forth the status of measures taken by each nation to protect and conserve the sea turtles (§ 609(a)(5)(A), (B), (C)).

The directive of § 609(a) was to be accomplished before the embargo date of May 1, 1991, set forth in § 609(b)(1). It is obvious that the embargo cannot be put in place without the data to be developed by the Secretaries under § 609(a). The status report requirement contained in § 609(a)(5)(C)ii is a necessary predicate to determining the exceptions to the embargo under § 609(b)(2)(A), (B) and (C). The two sections are interdependent.

It is clear to me that it is within the CIT's jurisdiction to decide whether there is a separation of powers question as to § 609(b). The statute challenged describes a single preservation/embargo scheme. I do not see how we can fail to execute the clear directive Congress provided in § 1581(i)(3).

Because section 609 as a whole is a "law providing for embargoes or other quantitative restrictions," both the claims under 609(a) and 609(b) arise out of it, and both claims lie within the exclusive jurisdiction of the CIT. This court is therefore without jurisdiction and is powerless to rule on the constitutionality of 609(a) at this time.

I would dismiss both claims for want of jurisdiction.