**EARTH ISLAND INSTITUTE, a California Nonprofit Corporation; Todd Steiner; The American Society for the Prevention of Cruelty to Animals, a New York Nonprofit Corporation; and The Humane Society of the United States, a Delaware Nonprofit Corporation, The Sierra Club, a California Nonprofit Corporation; and The Georgia Fishermen's Association, Inc., a Georgia Corporation, Plaintiffs,**

v.

**Warren CHRISTOPHER, Secretary of State; Robert E. Rubin, Secretary of Treasury; Elinor G. Constable, Assistant Secretary of State for the Bureau of Oceans, International Environmental, and Scientific Affairs; Ronald Brown, Secretary of Commerce; and Rolland A. Schmitten, Assistant Administrator for Fisheries, National Marine Fisheries Service, Defendants,**

and

**National Fisheries Institute, Inc., Intervenor–Defendant.**

Slip Op. 95–103.

Court No. 94–06–00321.

United States Court of International Trade.

June 5, 1995.

Heller, Ehrman, White & McAuliffe, San Francisco, CA (Joshua R. Floum, Sylvia Quast and Nicole J. Walthall) and Eugene Underwood, Jr., New York City, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen.; Lois J. Schiffer, Acting Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div. (Marc E. Montalbine and Jeffrey M. Telep) and Environment & Natural Resources Div. (James C. Kilbourne and Christiana P. Perry), U.S. Dept. of Justice; and Office of the Legal Adviser, U.S. Dept. of State (David Balton) and Office of Gen. Counsel, National Oceanic and Atmospheric Admin. (Jason Patlis), Washington, DC, of counsel, for defendants.

Garvey, Schubert & Barer, Washington, DC (Eldon V.C. Greenberg), for intervenor-defendant.

*Opinion & Order*

AQUILINO, Judge:

Having moved successfully for dismissal of the claims pleaded by Earth Island Institute and its director of the Sea Turtle Restoration Project, Todd Steiner, in the U.S. District Court for the Northern District of California, No. C–92–0832 JPV, *aff'd, Earth Island Institute v. Christopher,* 6 F.3d 648 (9th Cir. 1993), the defendants seek similar relief herein via an erroneously-styled Partial Motion to Dismiss. The decisions of those

courts in California, familiarity with which is presumed, were to the effect that whatever federal subject-matter jurisdiction exists over plaintiffs' claims lies exclusively with this Court of International Trade pursuant to 28 U.S.C. § 1581(i)(3) and (4).

## I

Counsel for the defendants chose to take issue with the plaintiffs by filing an answer to their current complaint before interposing the aforementioned motion, which, according to CIT Rule 12, is thus one for partial summary judgment under Rule 56 since it presents matters outside the pleadings within the meaning of that rule (although not the statement required by paragraph (i) thereof).

As submitted, the motion seeks discharge of all the named parties plaintiff save the Georgia Fishermen's Association, Inc. and of the Secretary of Commerce and the Assistant Administrator of the National Marine Fisheries Service as parties defendant on essentially the same ground, lack of standing to sue or be sued. The motion also seeks dismissal of the complaint insofar as it attempts to challenge the U.S. Department of State's certifications to Congress regarding the comparability of programs adopted by foreign countries to protect turtles from dangers inherent in trawling the seas for shrimp.

## A

Such certifications emanate from an appropriations act for the Departments of Commerce and State, among others, Pub.L. No. 101–162, 103 Stat. 988 (1989), included in which was the following provision:

> Sec. 609. (a) The Secretary of State, in consultation with the Secretary of Commerce, shall, with respect to those species of sea turtles the conservation of which is the subject of regulations promulgated by the Secretary of Commerce on June 29, 1987—
>
> > (1) initiate negotiations as soon as possible for the development of bilateral or multilateral agreements with other nations for the protection and conservation of such species of sea turtles;

> > (2) initiate negotiations as soon as possible with all foreign governments which are engaged in, or which have persons or companies engaged in, commercial fishing operations which, as determined by the Secretary of Commerce, may affect adversely such species of sea turtles, for the purpose of entering into bilateral and multilateral treaties with such countries to protect such species of sea turtles;
>
> > (3) encourage such other agreements to promote the purposes of this section with other nations for the protection of specific ocean and land regions which are of special significance to the health and stability of such species of sea turtles;
>
> > (4) initiate the amendment of any existing international treaty for the protection and conservation of such species of sea turtles to which the United States is a party in order to make such treaty consistent with the purposes and policies of this section; and
>
> > (5) provide to the Congress by not later than one year after the date of enactment of this section—
>
> > > (A) a list of each nation which conducts commercial shrimp fishing operations within the geographic range of distribution of such sea turtles;
>
> > > (B) a list of each nation which conducts commercial shrimp fishing operations which may affect adversely such species of sea turtles; and
>
> > > (C) a full report on—
>
> > > (i) the results of his efforts under this section; and
>
> > > (ii) the status of measures taken by each nation listed pursuant to paragraph (A) or (B) to protect and conserve such sea turtles.
>
> (b)(1) IN GENERAL.—The importation of shrimp or products from shrimp which have been harvested with commercial fishing technology which may affect adversely such species of sea turtles shall be prohibited not later than May 1, 1991, except as provided in paragraph (2).

(2) CERTIFICATION PROCEDURE.—The ban on importation of shrimp or products from shrimp pursuant to paragraph (1) shall not apply if the President shall determine and certify to the Congress not later than May 1, 1991, and annually thereafter that—

(A) the government of the harvesting nation has provided documentary evidence of the adoption of a regulatory program governing the incidental taking of such sea turtles in the course of such harvesting that is comparable to that of the United States; and

(B) the average rate of that incidental taking by the vessels of the harvesting nation is comparable to the average rate of incidental taking of sea turtles by United States vessels in the course of such harvesting; or

(C) the particular fishing environment of the harvesting nation does not pose a threat of the incidental taking of such sea turtles in the course to such harvesting.

103 Stat. at 1037–38.

In concluding that this court has subject-matter jurisdiction, the California district court restricted its ruling to the foregoing section 609(b); it held there could be no judicial review under subsection (a) because the claims based thereon "raise issues relating to the foreign affairs function, which rests within the exclusive province of the Executive Branch." 6 F.3d at 650. A majority of the Ninth Circuit panel concurred that such review would violate the constitutional principle of separation of powers. *Compare id. with* 6 F.3d at 654–56 (Brunetti, J., dissenting in part).

Plaintiffs' current complaint abandons any claims for relief under section 609(a). *See, e.g.,* Plaintiffs' Memorandum in Opposition [to] Defendants' Partial Motion to Dismiss, p. 7 n. 7. Among others, the claims for relief now are that this court (1) declare that the defendants have failed to implement the law, particularly the foregoing statute, by improperly confining its mandate to the Caribbean/Atlantic Ocean and failing to impose import prohibitions on shrimp and shrimp products; (2) declare that guidelines promulgated

under the aegis of the Secretary of State are arbitrary and capricious and constitute an abuse of discretion; and (7) enjoin the defendants from allowing the importation of shrimp and shrimp products from any nation with commercial fishing operations which may adversely impact sea turtles unless and until the Secretary determines and certifies that the foreign nation has a current and enforceable sea-turtle-protection program and an incidental taking rate comparable to that of the United States.

B

The papers before the court portray five of the remaining seven species of sea turtles, namely, Kemp's ridley (*Lepidochelys kempi*), loggerhead (*Caretta caretta*), green turtle (*Chelonia mydas*), hawksbill (*Eretmochelys imbricata*) and leather-back (*Dermochelys coriacea*) as still found regularly within coastal waters of the United States. Though apparently coveted and thus captured and killed by *Homo sapiens* since the beginning of time, according to the complaint it is "widely believed by scientists studying sea turtle populations that the inadvertent capture of turtles in shrimp trawls is a major factor in the mortality and decimation of these species and significantly hinders recovery of their populations." That is, when nets are dragged through the seas, snaring marine life in their paths, turtles can and do become entangled therein and drown if trapped too long beneath the surface. Allegedly, the extent of this phenomenon caused the National Marine Fisheries Service, acting at the behest of the Secretary of Commerce, to conduct research which led by 1981 to development of turtle-excluder devices or "TEDs" capable of releasing turtles, but not shrimp, from trawls. Effective October 1, 1987, such devices became mandatory for U.S. shrimp trawlers in the Gulf of Mexico and the Atlantic Ocean off the southeastern United States. *See Sea Turtle Conservation; Shrimp Trawling Requirements,* 52 Fed. Reg. 24,244 (June 29, 1987).

Leatherback, hawksbill, Kemp's ridley and green turtles have been listed as "endangered" within the meaning of the Endangered Species Act of 1973, 16 U.S.C. § 1531

*et seq.*, while loggerhead is considered "threatened" under that statute, which provides:

## § 1538. Prohibited acts

### (a) Generally

(1) ... [W]ith respect to any endangered species ... listed pursuant to ... this title it is unlawful for any person subject to the jurisdiction of the United States to—

(A) import any such species into, or export any such species from the United States;

(B) take any such species within the United States or the territorial sea of the United States;

(C) take any such species upon the high seas;

(D) possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of subparagraphs (B) and (C);

(E) deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity, any such species;

(F) sell or offer for sale in interstate or foreign commerce any such species; or

(G) violate any regulation pertaining to such species or to any threatened species ... listed pursuant to ... this title and promulgated by the Secretary pursuant to authority provided by this chapter.

Section 609 of the 1989 enactment, *supra*, has been placed by its drafters as a note to the section of this act, 1537, on international cooperation. *See* 103 Stat. at 1037.

## C

In December 1990, the President delegated to the Secretary of State the functions vested in him by section 609(b)[1], whereupon *Turtles in Shrimp Trawl Fishing Operations Protection; Guidelines* were published, 56

Fed.Reg. 1051 (Jan. 10, 1991). Effective February 18, 1993, they were revised "to bring them into line with the U.S. domestic program in light of recent changes in U.S. regulations which considerably expanded the TEDs requirement in the United States shrimp fishery." *Revised Guidelines for Determining Comparability of Foreign Programs for the Protection of Turtles in Shrimp Trawl Fishing Operations,* 58 Fed. Reg. 9,015, 9,016 (Feb. 18, 1993). Those domestic changes, "with some very limited exemptions", were to the effect that,

> beginning January 1, 1993, all U.S. commercial shrimp trawl vessels in the waters of the Gulf of Mexico and the Atlantic Ocean from North Carolina to Texas must use TEDs at all times in all areas.

*Id.* In the revisions, the Department of State explains (per its Bureau of Oceans and International Environmental and Scientific Affairs) that it had determined that the scope of section 609, *supra,* is the wider Caribbean/western Atlantic region, which encompasses accordingly Mexico, Belize, Guatamala, Honduras, Nicaragua, Costa Rica, Panama, Colombia, Venezuela, Trinidad and Tobago, Guyana, Surinam, French Guiana and Brazil. *See id.* at 9,015, 9,016. This geographic array was thereupon placed on notice that

> protective measures for sea turtles should be implemented throughout the year in all ... areas of the Caribbean and western Atlantic. The Department will continue to follow and review the results of research efforts and, if it is demonstrated conclusively that there are times and areas where sea turtles are not present, will consider modifying the certification requirements for that particular area. (As has been its practice in the past, the Department will make any such decisions after technical consultations with the National Marine Fisheries Service.) However, no such areas or times can be delineated at the present time and[,] in the absence of any such data, 100 percent TEDs use is the standard by which the Department will

---

**1.** *See Delegation of Authority Regarding Certification of Countries Exporting Shrimp to the United* States, 56 Fed.Reg. 357 (Jan. 4, 1991).

determine comparability of foreign programs with the U.S. program.

Accordingly, the revised guidelines provide that, to receive a certification in 1993, affected nations must maintain their commitment to require TEDs on all commercial shrimp trawl vessels by May 1, 1994. In addition, they must be able to demonstrate the use of TEDs on a significant number of shrimp trawl vessels by May 1, 1993. To receive a certification in 1994 and in subsequent years, affected nations must require the use of TEDs on all of their shrimp trawl vessels.

*Id.* at 9,016–17. The precise revisions are set forth following this pronouncement, *id.* at 9,017.

In support of their motion for partial summary judgment, the defendants have submitted copies of the required, annual certifications to Congress pursuant to section 609(b)(2), *supra*, for the years ended April 30, 1991 to 1994. Purporting to rely on the guidelines then in effect, the Department of State certification was affirmative for the first year as to all countries save Surinam, which did not submit the "required documentary evidence"[2], whereupon the Secretary of the Treasury was notified that imports of shrimp from that country were to be prohibited effective May 1, 1991. *See* Defendants' Appendix 2, p. 3. In 1992, French Guiana supplanted Surinam for such prohibition, while in 1993 and again last year both countries were subject to the embargo plus Trinidad and Tobago for each of those years along with Honduras in 1993. Costa Rica and Guatemala were passed for each of the four years upon representation(s) that they have commercial shrimp fisheries which are conducted solely on the Pacific coast without any fishing activity in the Caribbean. *See, e.g., id.* at 2.

The plaintiffs allege in paragraph 32 of their complaint that the

defendants have improperly allowed the continued import of shrimp and shrimp products from Brazil.... In fact, defendants granted Brazil yet another extension of 6 months to come into compliance with the sea turtle safety comparability requirement without imposing importation restrictions on Brazilian shrimp and shrimp products, despite clear provisions to the contrary in the Act and in their own Guidelines.

Paragraph 28 of that pleading avers that the Secretary of Commerce, acting through NMFS, determined on February 8, 1990 that over 150 countries or territories have commercial fishing operations which may adversely affect sea turtles and that roughly 70 of these nations exported shrimp to the United States in 1987–1988. The restriction of the January 10, 1991 Guidelines to nations in the wider Caribbean directly contradicts the requirements and directives of the Act to protect sea turtle species wherever they may be found. Subsequent agency actions have failed to cure these Guidelines.

## II

Obviously, these allegations are material to plaintiffs' asserted causes of action, and defendants' denial thereof in their answer hardly leaves them susceptible to disposition by way of a motion for summary judgment. Nonetheless, the defendants take the position in their motion that plaintiffs' challenge to the Secretary of State's certifications should be dismissed as a matter of law since

[s]ection 609 contains no provision for judicial review of the ... certifications and none of plaintiffs' claims arises under the Endangered Species Act. Therefore, judicial review of plaintiffs' claims must exist, if at all, pursuant to the APA, 5 U.S.C. § 701. However, the APA is not available to allow review of challenges to reporting requirements between the Executive Branch and Congress.

Defendants' Memorandum, p. 2. In other words, plaintiffs' challenge is not justiciable.

On its face, this position appears to disregard the decision(s) of the California courts which did hold that section 609(a), *supra*, which mandates executive-branch negotiations with foreign sovereigns and reporting thereon to the Congress, is beyond the hale

---

**2.** Defendants' Appendix 2, p. 3.

of the judiciary but also that "[t]he prohibitions on shrimp importation for environmental protection in this case clearly fall within the range of CIT jurisdiction identified by the Supreme Court in *K Mart [Corp. v. Cartier, Inc.,* 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988) ]", to quote from *Earth Island Institute v. Christopher,* 6 F.3d at 652. The published decision of the Ninth Circuit does not recognize any restriction on this court's jurisdiction over claims arising from section 609(b).

Defendants' position also appears to disregard the fact that the plaintiffs are not alleging a violation of the requirement that Congress be informed. *See, e.g.,* Plaintiffs' Memorandum, p. 11. Rather, they

> claim that defendants . . . *did not make* the comparability findings (one way or another) for all "vessels of the harvesting nations" as is plainly required by Section 609(b). . . . [T]he agencies did not apply the requisite standards at all to the Pacific fleets.

*Id.* (emphasis in original). If this is their precise point, the court joins the defendants in failing to comprehend plaintiffs' disclaimer that they *"do not* challenge the factual contents of any given certification". *Id.* at 12 n. 11 (emphasis in original). *Cf., e.g.,* complaint para. 32, *supra.* Perhaps, their reading of the cases upon which the defendants rely, namely, *Natural Resources Defense Council, Inc. v. Hodel,* 865 F.2d 288 (D.C.Cir.1988), *Taylor Bay Protective Ass'n v. Administrator, U.S. Environmental Protection Agency,* 884 F.2d 1073 (8th Cir.1989), *Greenpeace USA v. Stone,* 748 F.Supp. 749 (D.Haw.1990), and *Natural Resources Defense Council v. Lujan,* 768 F.Supp. 870 (D.D.C.1991), is the reason, for each of these decisions is that a reporting provision to Congress is not susceptible to judicial intervention. But, on their part, the defendants do concede that, to the

> extent that plaintiffs are really arguing that they take issue with the certification of certain nations because that certification is based on an impermissible construction of Section 609(b) (the Pacific fleet example) this claim should be heard solely within plaintiffs' existing claim that the Guidelines

are *ultra vires.* Federal defendants have not challenged the reviewability of that claim.

Defendants' Reply Memorandum, p. 5 n. 4.

■ Whatever nuances the parties attempt to engender, the Supreme Court has noted that judicial review of agency action "is available absent some clear and convincing evidence of legislative intention to preclude review." *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 231 n. 4, 106 S.Ct. 2860, 2867 n. 4, 92 L.Ed.2d 166 (1986), citing *Block v. Community Nutrition Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). No such legislative intent is discernible from section 609 on its face, *supra,* or from the history underlying its enactment, while the certifications resulting therefrom appear merely to be evidence relevant to disposition of this action.

In reviewing the claims in *Japan Whaling Ass'n* challenging compliance with the so-called Pelly Amendment to the Fishermen's Protective Act of 1967 and the Packwood Amendment to the Magnuson Fishery Conservation and Management Act, the Supreme Court relied on the Administrative Procedure Act, in particular, 5 U.S.C. § 706(1) or § 706(2)(A). *See id.* Not only do the plaintiffs rely on the APA in this similar kind of action, they take the position that it is also subject to judicial review under the citizen-suits provision of the Endangered Species Act ("ESA"). Their premise is that section 609 is a part of that statute by dint of its adoption as a note to the codified ESA provision on international cooperation, 16 U.S.C. § 1537.

The defendants counter that such placement does not mean that Congress amended ESA when it enacted section 609 and also that amendments by implication are disfavored, while the intervenor-defendant adds that location does not confer meaning and any inference regarding the substance of a provision must be founded upon more than its placement or labelling. The court con-

curs, but this agreement is not dispositive, for it seems that section 609 does supplement ESA. Stated another way, neither conflicts with the other; they can, if not should, be read in *pari materia.* For example, ESA section 1537(b) provides that the Secretary of Commerce, acting through the Secretary of State, shall encourage (1) foreign countries to provide for the conservation of endangered species and (2) the entering into of bilateral or multilateral agreements with them to provide for such conservation, while section 609(a)(1), 16 U.S.C. § 1537 note, adds that the Secretary of State, in consultation with his counterpart at Commerce, pursue such agreements "as soon as possible" with regard to the endangered species of sea turtles. *Cf.* 16 U.S.C. § 1540(h), entitled "Coordination with other laws", including the Tariff Act of 1930, as amended.

■ As indicated, ESA is possessed of a provision for lawsuits brought by citizens against the sovereign, essentially 16 U.S.C. § 1540(g)(1), subject to conditions specified in subsections (2) and, to a lesser extent, (3). One is that no suit commence prior to expiration of 60 days after written notice of an alleged violation under the act has been given to the government. The defendants now claim refuge under this precondition, but none can be found in view of the specific notice plaintiffs Earth Island Institute and Steiner provided via service and filing of their complaint in February 1992 in the California district court, the first paragraph of which alleged failure by the defendant Secretary of State *et alia* "to comply with and implement the clear mandate and requirement" of ESA and section 609 cited as the codified note thereto "to protect and conserve sea turtles from harm associated with shrimp fishing".[3]

3. Section 1540 also provides for jurisdiction in the district courts which, no doubt, led to commencement of the action in San Francisco first. As recited, the district court and then the court of appeals there held that jurisdiction over the pleaded subject matter is exclusively within this national Court of International Trade. *Compare Earth Island Institute v. Christopher,* 6 F.3d 648 (9th Cir.1993), *passim with* 16 U.S.C. § 1540(c) and (g)(1) *and* 28 U.S.C. § 451. *See also Northwest Resource Information Center, Inc. v. Nat'l*

## III

The motion at bar seeks dismissal of the complaint as against defendants Ronald Brown and Rolland A. Schmitten. It also seeks dismissal from the action of all the "environmental plaintiffs", as they are characterized in defendants' supporting memoranda.

### A

Paragraph 19 of the complaint alleges that defendant Brown, who is being sued in his official capacity as Secretary of Commerce, is charged by the governing act along with the Secretary of State with implementation of measures for the international protection and conservation of sea turtles, while paragraph 20 avers that defendant Schmitten, who is being sued in his official position of Assistant Administrator for Fisheries, National Marine Fisheries Service [4], "has been given the task and responsibility of developing technical and certification procedures for implementation of Pub.L. 101–162."

The answer which has been interposed to these allegations admits that each of these two named defendants "exercises certain responsibilities" under that statute, but only section 609(a) thereof; they thus deny any actionable involvement. Counsel argue in support of their motion that

neither the Secretary nor the Assistant Administrator has the authority or responsibility for the actions being challenged in this case, or the ability to grant the relief requested. Plaintiffs' claims arise solely under Pub.L. 101–162, Section 609(b). They have raised no claims under the ESA, and therefore authority and responsibility under that statute is irrelevant. With respect to the implementation of Section 609(b), neither the Secretary of Com-

*Marine Fisheries Service,* 25 F.3d 872, 875 (9th Cir.1994) (ESA an act of "general character governing citizen suits" which does not take precedence over more-explicit jurisdictional enactments). *Cf. Village of Kaktovik v. Watt,* 689 F.2d 222, 231–32 n. 76 (D.C.Cir.1982).

4. This Service is apparently under the National Oceanic and Atmospheric Administration, itself organized within the Department of Commerce.

merce nor the Assistant Administrator of NMFS has authority to make certifications to Congress or the power to impose embargoes. Furthermore, the Guidelines implementing Section 609(b) were promulgated solely by State. Therefore, no basis exists for keeping Commerce in this case.

Defendants' Reply Memorandum, p. 3 n. 2.

■ This position may prove well-founded after discovery and development of all the material facts, but the court is not at liberty to grant the requested, summary relief based on the paucity of such facts already presented. Moreover, contrary to the foregoing argument that the "plaintiffs have raised no claims under the ESA", that act is part of their complaint *passim*, commencing with the very first paragraph thereof.

### B

The complaint's paragraph 14 portrays the plaintiff Georgia Fishermen's Association, Inc. ("GFA") as established in 1974 under the laws of that state as an

> organization of commercial fishermen, seafood packers, and suppliers primarily involved in the production and sale of shrimp harvested from the Southeastern Atlantic coast of the United States ... formed to more efficiently deal with issues facing the commercial shrimp fishing industry, such as fair pricing for their product and compliance with state and federal regulations.

The next paragraph alleges, among other things, that defendants' failure to carry out the law has adversely affected the ability of GFA members to compete with shrimp caught by foreign fleets and then exported to the United States.

Defendants' instant motion is not aimed at GFA, whereupon its co-plaintiffs argue that, if at least one party plaintiff has standing to proceed, a court need not decide whether or not other named plaintiffs can also continue, citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 562 n. 9, 50 L.Ed.2d 450 (1977). Clearly, counsel for the defendants are cognizant of this approach and subsequent, similar rulings in *Watt v. Energy Action Educational Foundation,* 454

U.S. 151, 161, 102 S.Ct. 205, 212–13, 70 L.Ed.2d 309 (1981), and *Gen'l Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 402 n. 22, 102 S.Ct. 3141, 3156 n. 22, 73 L.Ed.2d 835 (1982), among other cases, nor do they gainsay that the complaint "identifies a cognizable injury on the part of the environmental plaintiffs (their ability to observe sea turtles)". Defendants' Reply Memorandum, p. 11. Rather, their contention is that plaintiffs' pleaded posture

> fails to demonstrate a causal connection between this [admitted] injury and the allegedly illegal conduct of the defendants (failure to embargo shrimp imports), and further fails to establish that relief from this injury is likely to follow from a decision in their favor.

*Id.* *See generally* Defendants' Memorandum, pp. 21–28. In other words, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In addition to pressing their position as to the causation and redressability required, the defendants argue that the interests of GFA and of the other plaintiffs are divergent:

> Here, the interest of the environmental plaintiffs is the preservation of sea turtles. By contrast, the interest of the Georgia Fishermen is to avoid competition from foreign shrimp fishermen who do not operate under environmental regulations comparable to those in effect in the United States. Indeed, U.S. commercial shrimp fishermen, some of whom are members of the Georgia Fishermen, staunchly opposed the imposition of these environmental regulations on themselves.... From this, it would appear that the Georgia Fishermen have joined in this suit in the hopes of securing court-ordered embargoes against foreign competitors. By contrast, the environmental plaintiffs hope to influence foreign environmental practices through the threat of embargoes.

Defendants' Reply Memorandum, p. 18. In sum, "the issue of the environmental plaintiffs' standing must be reached." *Id.*

The court concurs. The only question is timing. Standing was the issue in another action brought under ESA by "organizations dedicated to wildlife conservation and other environmental causes", *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 2135, 119 L.Ed.2d 351 (1992), wherein the Court reiterated that a party invoking federal jurisdiction always bears the burden of establishing that it has suffered injury in fact, that there is a causal connection between that injury and the conduct complained of, and that that injury is likely to be redressed by a favorable decision. 504 U.S. at 560, 112 S.Ct. at 2136. Since these three elements

> are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.... At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim,".... In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed.Rule Civ.Proc. 56(d), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial,"....

504 U.S. at 561, 112 S.Ct. at 2136–37, citing or quoting from *Lujan v. Nat'l Wildlife Fed-*

*eration,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); and *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

As indicated at the beginning of this opinion, at the time the defendants interposed their instant motion, the status of this action was issue joined, thereby precluding relief simply pursuant to CIT Rule 12(b). Also, their submission of matters outside the pleadings transformed their motion from one for judgment thereon per Rule 12(c) into one for summary judgment under Rule 56. Paragraph (i) of that last rule mandates inclusion of "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried", but such a statement has not been forthcoming from the defendants.[5]

■ Be this as it may, defendants' answer places in issue each and every averment as to the named party plaintiffs described in paragraphs 4–15 of their complaint. Joinder of issue in this manner without more[6] leaves the court unable to grant judgment as to them one way or the other. Such final relief must abide presentment of the material facts, if not their discovery. Suffice it to note for now that in *Jones v. Butz,* 374 F.Supp. 1284 (S.D.N.Y.), *aff'd,* 419 U.S. 806, 95 S.Ct. 22, 42 L.Ed.2d 36 (1974), a case challenging the act of August 27, 1958 to establish federal policy as to the use of humane methods of slaughter of livestock, 7 U.S.C. § 1901 *et seq.,* the courts sustained the standing of the plaintiffs, apparently including that of the first named as "the next friend and guardian for all livestock animals now and hereafter awaiting slaughter in the United States"[7]

---

5. Recently, the plaintiffs filed a motion for summary judgment on the substantive issues raised by them but not under direct challenge in defendants' motion which is properly accompanied by a Rule 56(i) statement, as well as by affidavits from plaintiff Steiner and on behalf of plaintiff GFA, among others.

The defendants have moved for a stay of plaintiffs' motion pending resolution of the one at bar which has been granted.

6. Defendants' submission outside the pleadings does not shed any additional light on the issue of plaintiffs' standing.

7. 374 F.Supp. at 1284.

upon a conclusion that her "injury need not be large", to quote from the opinion of the three-judge district court, 374 F.Supp. at 1288 n. 5, citing *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); and *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

This court also notes that at least some of the plaintiffs now before it are not strangers to this kind of litigation. In *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1581 (9th Cir.1993), for example, the Sierra Club was found to have standing under both ESA section 1538 and APA section 702 upon a representation in the complaint that "the organizations [bringing suit] and their members derive scientific, recreational, and aesthetic benefit and enjoyment from the existence in the wild of the Mt. Graham Red Squirrel." In *Earth Island Institute v. Mosbacher,* 929 F.2d 1449 (9th Cir.1991), the standing of the Institute to seek the enforcement of various provisions of the Marine Mammal Protection Act of 1972, 16 U.S.C. § 1361 *et seq.,* especially those relating to the protection of dolphins, was not in dispute. Similarly, in *Japan Whaling Ass'n v. American Cetacean Soc'y, supra,* the standing of the Humane Society of the United States, *inter alia,* was implicitly adequate to seek relief against the Secretary of Commerce.

Nonetheless, the plaintiffs must also have standing herein, which is to be established at trial or otherwise. *See generally Nat'l Corn Growers Ass'n v. Baker,* 10 CIT 345, 636 F.Supp. 921 (1986), *rev'd on another ground,* 840 F.2d 1547 (Fed.Cir.1988).

### IV

In view of the foregoing, defendants' motion for partial summary judgment must be, and it hereby is, denied. Counsel for each of the parties are to confer and then file with the court on or before June 30, 1995 a proposed scheduling order, expediting pretrial preparations, submission of a pretrial order and then trial of this action. The stay of plaintiffs' motion for summary judgment is hereby extended until further direction of the court.

So ordered.